Colleen Duffy Smith for the Plaintiff and Appellant, Martin Oren. On July 11, 2004, Mr. Oren was guaranteed constitutionally adequate medical care when he was a detainee of the County of Santa Clara and its sheriff's officers, Jose Zuniga and Steven Van de Graaff. He was denied that care due to the deliberate indifference of the officers. Deliberate indifference requires an inquiry into the officer's state of mind, which is judged under a subjective standard. Appellant, my client, argued in his reply brief that knowledge may be imputed to the officers by constructive notice. The harm that you seek to vindicate here was when he had the accident the next day, after he bailed out. Could you repeat the question, Your Honor? What harm do I seek to do? Yes. Does the appellant seek to vindicate? Yes. The harm that he seeks to vindicate is the denial of his due process rights to obtain constitutionally adequate medical care as a detainee in the jail.  What causation, then? Well, the whole case arises not because of what happened to him in the jail, correct? No, that's not correct, Your Honor. Well, what did they fail to do? What they failed to do, the deputies failed, just like in the Conn case that was recently submitted by my opponent as supplemental authority. What the sheriff's officers failed to do was to report the information, which was a policy of their employer, the county, adequately. Did they fill out the form and check the boxes about bizarre behavior? And there was two boxes there. Didn't they check them both? Yes. Bizarre or aggressive behavior, psychiatric mental history, developmentally disabled, both boxes were checked. Yes, they checked boxes, Your Honor. But the argument here is, number one, writing down on that agency advisory form that he was on psychiatric medications, lithium and Zyprexa, was very deceiving, because uniquely known to these officers, he wasn't taking his medications. That was never conveyed to the jail personnel. So let me see if I understand this. They delivered him to the main jail facility, is that correct? That's correct. And once they delivered him there, they filled out this form, and I guess they did their own little, they have to do their report, correct? Their incident report and the agency advisory form, correct. So they filled out this report. And this report ultimately got sent to who? Who reviewed this within the jail? Well, the licensed social worker testified that she did not even review it. The contact that Officer Vandegraaff had at the main jail was with Nurse Agnes Marquez. And what was her role? Her role was to do the initial medical screening on Mr. Oren. Did she look at this form? I do not believe she looked at the form, Your Honor. And who signed it down here at the bottom? Okay. You're correct. She did sign it. I'm recalling now. I couldn't recall. She did look at the form. That's correct. But what officers... And did she ask him a series of questions? Did she ask whom a series of questions? Mr. Oren. She asked him questions having to do with medical screening procedures. Yes. The person that questioned him for the psychiatric evaluation was the licensed social care worker. What... How long... Excuse me. How long after he was sent to that jail was he... Before he was bailed out? Boy, I don't want to give the Court an incorrect answer, but my recollection is within hours. What could have been done had the reports been given to someone who you contend should have received it? What could have been done? Could they have ignored the bail order and kept him in jail? No, because before he bailed, Your Honor, he had the psychiatric screening. What they could have done is reported everything that they knew. They knew that he had made threats. They knew that his behavior was manic. They knew... Well, I understand... Excuse me. I understand that, but what I'm wondering, when he bailed himself out, what could they have done more to treat him or do anything about it? They had to abide by the bail order, did they not? They did, Your Honor, but the intervention or the harm complained of should have been adequate medical care before he bailed out. He was due that as a detainee. Within the hour that you mentioned? I beg your pardon? Within the hour... You say he was bailed out within about an hour. I said hours, Your Honor. I believe... I can address your question in my reply. I'll look in the record, but I believe he was incarcerated for four hours, four or five hours. Okay, well, same problem. During that four hours, you're contending they should have done some sort of treatment? Because they sure couldn't have kept him in jail after he was bailed out and the bail order was issued. That's correct, Your Honor. What the appellant is contending is, rather than the 12-minute cursory psychiatric exam by the licensed social care worker who testified that if she knows somebody suffers from a condition, she would go do a much more thorough exam and they actually at the Santa Clara County Jail Facility have an inpatient psych unit. Suppose she did all that and a report was made to the psychiatric people. What could they have done? They could have 5150'd him, Your Honor. Under Welfare and Institutions Code 5150, they could have instituted an involuntary hold, they could have medicated him, and they could have treated him for his uncontrolled bipolar mania instead of permitting him to bail, go back and collect his rental car, get in it and drive for 12 hours and involve himself in a single vehicle rollover which caused traumatic brain injury to him. The wrongdoers, in your view, are the two deputies who failed to transfer information? That's correct, Your Honor. Okay. So it's your position that they should have, on this form that is check-the-box, check-the-box form, and I guess there's a little space here, that they should have written out their observations on this form? Well, I'm suggesting as to the form, as your question is directed to the form, they could have documented that the psychiatric medications that they indicated weren't being taken by Mr. Oren. Okay? But what they also could have done is verbally communicated to Agnes Marquez, who testified that they did not do so, Officer Van de Graaff did not do so, they could have communicated to her, just like the officers in Kahn, a case decided two and a half months ago by this court, they could have communicated their observations. They're the reporters, the officers are the reporters out in the field who need to give the information to the jail personnel who then can do an adequate medical examination. He was denied an adequate medical examination according to his expert testimony, Dr. Missett, because they did not have the information necessary to do a proper diagnosis and then decide if treatment was necessary. Do you want to take some time for rebuttal? I do, thank you, Your Honor. I'll give you a minute. Good morning. May it please the court, I'm David Rolo. I am a Deputy County Counsel for the County of Santa Clara. I represent the appellees in this case. Deputy County Counsel Nisa Fleiger is also present. I would like to clear up one thing that counsel stated. The record indicates that Mr. Oren was taking his medication on the morning in question. His sister, Deborah, testified that as of 8 a.m., when the deputies first arrived at the residence and first had their encounter with Mr. Oren, he had taken his medication. That's in the record at Volume 3, Tab 13b, page 375. Also, Mr. Oren told the social worker at the jail that he had taken his medication. That's in the record at Volume 4, page 520. Could it be that the complaint was that the medication wasn't working at that time? I think the evidence could lead to that inference, but the fact was... That's what the sister told the officers, that it wasn't working. Yes, I would agree with that. I think I am representing more than the deputies here. The county is an appellee in this case, as I understand the pleadings. Counsel just admitted that the deputies allegedly violated county policy by not relaying the information that they claim was omitted. There is no evidence in this case that there's any county policy or practice that was the cause of any constitutional problem, and I think the county, as a defendant, the district court's order was correct. With respect to Deputy Zuniga, there's no evidence in the record of any affirmative act or omission on his part other than the failure to detain Mr. Oren under Section 5150. I don't think Mr. Oren had a constitutional right to be involuntarily committed to a mental health facility to get treatment. So Deputy Zuniga's conduct in this case is limited to his decision as to whether or not to detain Mr. Oren under Section 5150 that he chose not to do. Deputy Vandegraaff is the appellee defendant whose conduct is really at issue here, and I think we've lost sight of what that issue is. The issue is whether or not there was a tribal issue of fact regarding Deputy Vandegraaff's state of mind. Was the evidence such that he knew Mr. Oren's condition exposed him to a substantial risk of serious harm while in custody and assuming he was not treated? That's the first phase of it. The second phase, of course, is Deputy Vandegraaff knowing of that risk, then decided to purposely omit or recklessly omit all of the minute details that he was made aware of that morning with regard to Mr. Oren's mental condition. That's the issue in this case. Was there a tribal issue of fact with respect to what Deputy Vandegraaff knew? Not what he should have known, and not what he may have known, and not what he should have figured out. The deliberate indifference standard, of course, is not a high standard. It's an extremely high standard. And what the trial judge decided correctly in this case was that there was no evidence that any jury could conclude that Deputy Vandegraaff recklessly disregarded any risk that may have existed with respect to Mr. Oren while in custody. Judge White correctly noted in his order that according to the pleadings and the argument in the case, the issue was a risk that arose upon Mr. Oren's release. The risk was present in this case, if there was one, when he was not in custody. There was no risk to Mr. Oren with regard to any failure to psychologically treat him, provided he was in custody. That's the problem in this case. What would have been required under 5150 in order to involuntarily restrain him there? The deputies would have had to have been able to articulate specific facts that would lead to any reasonable inference that Mr. Oren was a danger to himself, that he was a danger to others, or that he was gravely disabled. That's the standard they would have been able to articulate in a warrant or anything else with respect to probable cause. The standard for the 5150 detention is essentially no different than the arrest standard. And so I think what the appellants are arguing in this case is that the deputies had some obligation to manufacture probable cause on the grounds that Mr. Oren may need psychological treatment and that he had some right to be involuntarily detained against his will in order to get that psychological treatment. I don't think that's the law in this case. Judge Rustani may well recall a case where she was sitting last December in the Third Circuit. The case is entitled King v. The County of Gloucester in New Jersey. In that particular case, the police took custody of an individual who was bipolar, who had violated a temporary restraining order, who was arguably not being held by his medication at that time. He was arrested, he was brought in for a violation of the temporary restraining order, and what happened to him in the jail was not part of the decision, but he ended up suffering some excessive force issues while in the jail. That part of the case settled. The case proceeded against the arresting officers who were faced with a mentally ill detainee,  whether or not to place him in jail or place him in a medical facility for an evaluation. Mr. King's stepmother testified. She was the complaining party. She said, I told the officers he was off his medication, that he needed medication, he needed treatment. Mr. King, on the other hand, like Mr. Oren, basically said, I'm fine, I'm calm, I'm rational. His demeanor as presented to the arresting officers was such that it contradicted what they were hearing from his stepmother. They interrogated Mr. King. They did the same thing, essentially, that the deputies in this case did, and they decided at that time that based upon all of the circumstances, the totality of the circumstances, Mr. King did not need to be placed in the mental institution or in a medical facility because there were no facts that his mental disorder, if not immediately treated, would pose a substantial risk of harm while he was in custody. That's the issue in this case. It's not whether or not he's at risk when he's not in custody. Is your view that it's legally impossible to have this kind of action for any event that happens after custody? There is no case that I'm aware of that creates a duty under the 8th or the 14th Amendment that protects a detainee, an ex-detainee or an ex-prisoner against any deliberate indifference to a serious medical need when he's not in custody. The constitutional duty arises when the individual is in custody. And the entire thrust of the argument in this case was that Mr. Oren was at risk. Well, if they know that he's in substantial danger or whatever and they were to release him. Knowing there's a substantial risk of harm. In fact, we have a case involving a woman who was arrested late at night and they were going to take her down to the jail. Instead, they released her in an area that was not so safe. She was later raped. We allowed a case to go forward under those circumstances after they had released her. That's a different issue, I think. It is possible. Well, it is possible. But again, the issue is is there a tribal issue of fact as to deputy Vandrath's knowledge in this case? And I think if you look at the Kahn case and you look at the Wallace decision, which Judge Hugg was part of I think what you have to find here is evidence of obviousness that Mr. Oren's condition was so obvious that any normal person would have concluded that a risk existed to him while in custody if he failed to receive treatment. Obviousness being number one. There was motive in the Kahn case. The deputies failed to follow policy. They had an incentive to minimize the detainee's condition. Finally, there was acknowledgement after the fact by Deputy Ashton in the Kahn case. He actually testified, I didn't feel very good about this. We should have done this. I didn't do it because my partner was the senior officer. So I think Kahn and Wallace stand for the proposition that insofar as a tribal issue of fact is concerned relative to the deputy's knowledge you look for some obviousness, you look for some motive and you look for some acknowledgement after the fact, none of which are present. Okay. We have a short one minute rebuttal. Judge Hugg, I'd like to answer the question that we left hanging. He was in custody from 3.40 p.m. and bailed at 8 p.m. Mentally ill person. Is there any evidence that he acted bizarrely or strangely? Was suicidal or during the five hours? Or four hours? There is, Your Honor. It's unfortunately in a DOC video which the Ninth Circuit can't watch to the point that when he was administered the... Is it part of his record? I don't believe that the video is, Your Honor. Then I guess I don't want to know about it. We're looking at the subjective state of mind of these deputies at the time. That's what's really important. Do they have a culpable state of mind here? At 3.40 in the afternoon. And to protect and serve. They told everybody, including his sister and Dr. Abaci that they would take him in for evaluation so he could be hospitalized. And they knew his prior mental breaks, present hallucinations he wouldn't improve without hospitalization. He had made threats. They themselves handcuffed him in the patrol car due to what they viewed as a threat to officer safety. They, I'm sorry, Deputy Van de Graaff that very morning when going to the sister's house on a previous call with respect to Mr. Oren asked Mr. Oren to go admit himself to hospital. They knew this guy needed hospitalization and they failed to take reasonable measures which thereby set into motion these moving forces that caused the ultimate harm. Thank you. Thank you. Oren v. County of Santa Clara is submitted at this time.
judges: Restani, Hug, Paez